OPINION OF THE COURT
David B. Saxe, J.
Petitioner commenced this CPLR article 78 proceeding seeking the review, annulment and correction of the New York City commercial rent or occupancy tax assessed against him for the tax period commencing December 1970 through May 1985.
Petitioner Fleisher is a tenant occupying offices on the sixth floor in the building located at 15 Columbus Circle. From December 1, 1970 through April 30, 1985, petitioner sublet the premises from Visual Information Systems (VIS). Beginning May 1, 1985 and continuing to the present, petitioner occupied the premises pursuant to a direct lease with 19 New York Properties Ltd. Partnership. Throughout this entire period, petitioner has sublet a portion of the premises to various persons or entities.
During his tenancy, petitioner has paid no commercial rent or occupancy tax (CRO tax). This delinquency was discovered independently by respondents’ audit unit, during a routine audit of petitioner’s landlord, and by a special task force seeking out nonfiling lessees. Pursuant to the investigation of the special task force, petitioner received a notice of determination, dated July 14, 1984, which indicated that the sum of $18,940.18 in CRO taxes, interest and penalties was due for the period commencing May 31, 1980 and terminating May 31, 1984. On July 31, 1984, petitioner submitted a petition for hearing seeking a reconsideration of this determination. On August 15, 1984, respondents notified petitioner that his CRO tax deficiency had been recalculated and reduced to the amount of $6,158.43 for the period from June 1, 1981 to May 31, 1984. In order to resolve the dispute, petitioner was directed to execute a "Consent and Waiver Agreement”, consenting to the correctness of the tax deficiency as recalculated and reflected therein. When petitioner tendered payment pursuant to the agreement, however, respondents refused acceptance, allegedly on the basis of the fact that the audit unit was then in the process of auditing petitioner.
Subsequently, by notice of determination dated November 22, 1985, petitioner was informed that the sum of $64,884.17 in CRO taxes, interest and penalties was due and owing for *620 the tax period commencing December 1, 1970 through May 31, 1985. On December 20, 1985, petitioner prepared and signed a petition for hearing, requesting a redetermination of the tax deficiency. On the same day, an employee of petitioner correctly addressed the petition to respondent, postmarked the envelope by means of a postage meter owned by petitioner’s business and then deposited the stamped, metered envelope into a mail chute in the building, 15 Columbus Circle.
On January 23, 1986, petitioner received a letter from respondent denying his request for a hearing on the grounds that his petition for hearing was untimely. This denial was based on the fact that the request was not made within 30 days of the date of the notice of determination, since it was not postmarked by the United States Postal Service until January 2, 1986. It was respondents’ position, therefore, that the November 22, 1985 notice of determination indicating a tax deficiency in the amount of $64,884.17 had become final and binding. On February 20, 1986, petitioner thus paid the amount due, allegedly under protest and without waiving his right to commence this proceeding. Thereafter, by petition served February 21, 1986, this proceeding was begun.
Herein, petitioner alleges that respondents arbitrarily and capriciously denied him the right to a hearing, thereby depriving him of his due process rights; that his tax assessment should be reduced by the amount indicated in the consent and waiver agreement, which agreement is binding on respondents; that the assessment levied against him is erroneous in that the assessment does not take into account the aggregate amount of $131,403 received by him from his sublessees between 1971 and 1985; and that penalties were improperly assessed against him, since he reasonably believed that his landlord’s tax returns included any CRO taxes payable by him. Respondents oppose the award of any of the relief demanded, contending that petitioner’s failure to exhaust administrative remedies deprives him the right to seek judicial review or, alternatively, that petitioner’s arguments are legally insufficient to entitle him to relief.
The CRO tax is imposed pursuant to Administrative Code of the City of New York title L which title adopts much of the language of the State sales and use tax provisions (see, Tax Law art 28). As relevant here, Administrative Code § L46-8.0 provides, in part, that a determination of the Director of Finance with regard to the amount of tax due "shall finally and irrevocably fix the tax unless the person against whom it *621 is assessed, within thirty days after the giving of notice of such determination shall apply in writing to the director of finance for a hearing” (cf. Tax Law § 1138). This provision has been interpreted as requiring that a request for a hearing must be mailed within 30 days of the date that the tax director mails his notice of determination (Matter of Ciraldo v Department of Fin., 123 Misc 2d 602).
Administrative Code § L46-17.0 sets forth the guidelines to be applied when determining whether a notice required to be given pursuant to this title is timely. This section authorizes the use of the mail for such purpose (Administrative Code § L46-17.0 [a]). The section further provides that the date of the United States postmark stamped on the envelope shall be deemed to be the date of delivery for any notice required to be filed within a prescribed period or on or before a prescribed date (Administrative Code § L46-17.0 [d]). Apparently recognizing the widespread use of privately owned postage meters, the section goes on to state that the above-quoted rule "shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulation of the commissioner of finance” (Administrative Code § L4617.0 [d]). Thus, it is necessary to turn to the regulations promulgated pursuant to the authority conferred by this provision to determine the timeliness of petitioner’s petition for hearing (see, 4 St Tax Rep [CCH], |f 309-651).
The regulations specifically address the fact situation presented here, i.e., an envelope having both a private and a United States Postal Service postmark. "If the envelope or wrapper containing the document or payment has a postmark made by the United States Postal Service in addition to the postmark not so made, the postmark which was not made by the United States Postal Service will be disregarded, and whether the envelope was timely mailed will be determined solely by applying the provisions of subdivision (a) of this section” (4 St Tax Rep [CCH], fl 309-651 [regulation § 1 (b) (3)]). Subdivision (a) tracks the language of section L46-17.0 (a), which provides that the date of the United States postmark stamped on the envelope will be deemed the date of delivery (4 St Tax Rep [CCH], fl 309-651 [regulation § 1 (a) (1)]).
Petitioner here concedes that the Postal Service postmark was not stamped on his envelope until January 2, 1986. Petitioner had only 30 days from November 22, 1985, or until December 23, 1985, to timely request a hearing. Thus, petitioner’s request was properly denied as time barred.
*622 Nor is this finding altered by the fact that the two-week delay in postmarking the envelope is attributable solely to the Postal Service. The mailing regulations provide that the "sender assumes the risk that the envelope containing the document * * * will bear a postmark date stamped by the United States Postal Service within the * * * prescribed date for the filing of such document”. (4 St Tax Rep [CCH], [f 309-651 [regulation § 1 (a) (2) (iii)].) If petitioner wished to avoid this risk, he could simply have had the petition personally delivered. Alternatively, he could have mailed it by registered or certified mail, in which case the date of delivery to the post office would be controlling (4 St Tax Rep [CCH], |f 308-651 [regulation § 1 (c)]).
Having failed to obtain a timely administrative review of the November 22, 1985 notice, that determination worked to "finally and irrevocably fix the tax”, with resort to judicial review precluded by petitioner’s failure to exhaust the administrative review procedures provided by the statute (Administrative Code § L46-8.0; see, Tax Law § 1138 [a]; Matter of West Mountain Corp. v State of New York Dept. of Taxation & Fin., 105 AD2d 989, affd 64 NY2d 991). Furthermore, the remedies provided by this section are exclusive for review of an assessment (Administrative Code § L46-10.0; see, Tax Law § 1138; Allstate Ins. Co. v Tax Commn., 115 AD2d 831).
Accordingly, having failed to adhere to the review procedure set forth in section L46-8.0, petitioner is bound by the determination of the Director of Finance and is not entitled to judicial review thereof. All relief requested herein is denied and the petition is dismissed.