■ In the Matter of HAROLD RASHBAUM et al., as Officers of U.S. General Supply Corporation, Petitioners, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents. [645 NYS2d 175] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

At all times relevant to this proceeding petitioners, Murray Harrow and Harold Rashbaum, were the chair and vice-chair, respectively, of U.S. General Supply Corporation (hereinafter USG), a retail and mail-order supplier of tools and hardware. In August 1988, Allen Korenstein, an auditor from the Department of Taxation and Finance, Division of Taxation (hereinafter the Division), informed USG that a sales and use tax audit

of that company would be conducted for the period September 1, 1985 through May 31, 1988. Shortly thereafter, an involuntary bankruptcy proceeding was commenced against USG, which USG later successfully petitioned to have converted to a voluntary proceeding under chapter 11 of the United States Bankruptcy Act (11 USC § 101 *et seq.*). Korenstein was advised in September 1988 that claims of creditors had to be filed by December 23, 1988, and on November 22, 1988 the Division filed a proof of claim in the bankruptcy proceeding in the amount of $16,723.04, representing the sales and use tax due, plus interest, from USG for the period March 1, 1988 through May 31, 1988.

In the interim, beginning in October 1988 and continuing through February 1989, Korenstein spent approximately two weeks reviewing the books and records of USG, during which time he had contact with various USG employees. Thereafter, in March 1989, the Division filed a ballot with Bankruptcy Court as an unclassified priority and administrative creditor opposing USG's reorganization plan on the ground that the plan failed to provide for the payment of interest in the event USG elected to pay the taxes due over a six-year period. The plan subsequently was approved on April 25, 1989 and USG paid its creditors with funds from various sources.

Korenstein's audit notes reflect that he met with certain USG representatives in May 1989 and again in September 1989, at which time Korenstein discussed his findings. In November 1989, the Division issued a statement of proposed audit adjustment and, the following month, requested additional books and records from USG. Although Korenstein attempted to arrange a site visit in January 1990 to review various records related to the audit, USG opposed this effort, taking the position that the order confirming its reorganization plan barred the Division from assessing USG any additional taxes.

In January 1990, the Division issued to petitioners a notice of determination and demand for payment of sales and use taxes due for the period September 1, 1985 through May 31, 1987 in the amount of $252,608.74, plus interest and penalties, and a similar notice was issued to petitioners in April 1990 for the period June 1, 1987 through November 30, 1988 in the amount of $192,115.68, plus interest and penalties. Following a conciliation conference, the tax assessments were reduced to $58,507.05 and $84,087.59, respectively, and all penalties were canceled.

Petitioners subsequently requested a redetermination/revision of the sales and use taxes due raising numerous objec-

tions, including their assertion that the Division should be estopped from assessing taxes against them as officers of USG. Following a hearing before an Administrative Law Judge (hereinafter ALJ), petitioners' estoppel argument was rejected and the prior assessments were, by and large, sustained. Petitioners filed exceptions to the ALJ's decision and, in December 1994, respondent Tax Appeals Tribunal sustained that determination, modifying only finding of fact No. 5. Petitioners thereafter commenced this proceeding pursuant to CPLR article 78 to review the Tribunal's determination.

Petitioners, as so limited by their brief, contend only that the Division, by participating in the bankruptcy proceeding and filing the proof of claim and ballot, reasonably led them to believe that there would be no additional assessments of sales and use taxes against USG and, as such, should be estopped from assessing additional taxes against them as responsible officers. We cannot agree.

As a starting point, it is well settled that absent an unusual factual situation, the doctrine of estoppel may not be invoked against a governmental agency engaged in the exercise of its governmental functions (*see, Advanced Refractory Technologies v Power Auth.*, 81 NY2d 670, 677; *Matter of Walsh v Tax Appeals Tribunal,* 196 AD2d 367, 370). Indeed, estoppel traditionally is applied in taxation cases "only when it is necessary to prevent manifest injustice" (*Matter of Moog, Inc. v Tully*, 105 AD2d 982, 983). Additionally, in order to impose an estoppel upon a party, three elements must be established: " '(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts' " (*Matter of Walls v Levin*, 150 AD2d 873, 874, quoting *Airco Alloys Div. v Niagara Mohawk Power Corp.*, 76 AD2d 68, 81-82; *see, Matter of Hayden v S & W Meat & Poultry*, 221 AD2d 823, 824-825).

Here, we perceive no unusual circumstances that would warrant departure from the general rule governing the application of estoppel to a governmental agency. Moreover, our review of the record reveals that contrary to petitioners' assertions, the elements required for the imposition of an estoppel simply are not present. As to the issue of misrepresentation, petitioners contend only that the Division's active participation in the bankruptcy proceeding "conveyed * * * the impression" that USG would not owe any additional tax liability beyond the amount claimed by the Division in that proceeding—a belief reinforced, petitioners argue, by the fact that the only

stated ground for the Division's rejection of USG's reorganization plan was the absence of a provision for the payment of interest. Petitioners' assertions, however, are belied by the record.

Initially, the record reveals that the claim filed by the Division in the bankruptcy proceeding related to USG's failure to remit the tax due on a previously filed return covering the period March 1, 1988 to May 31, 1988; the audit encompassed the period September 1, 1985 through May 31, 1988. The record further indicates that the Division, through Korenstein, had contact with USG representatives regarding the audit well after both the December 1988 claims bar date and the confirmation of USG's reorganization plan in April 1989; specifically, Korenstein's audit notes reflect contacts with USG representatives in March, April, May and September 1989. Korenstein also requested additional books and records from USG in December 1989. Additionally, the record contains a copy of a January 1990 letter from Roberta Strasburg, one of USG's designated representatives, wherein Strasburg indicated her belief that Korenstein's examination of USG records had been completed when the Division issued its statement of proposed audit adjustment dated November 14, 1989.

As petitioners have, in our view, failed to demonstrate that the Division misrepresented or concealed the true status of the audit during the relevant time period, there is no basis for invoking the doctrine of estoppel. We reach a similar conclusion with respect to petitioners' assertion that the Division's claim is barred by res judicata, as the Tribunal correctly concluded, *inter alia*, that the tax assessments against petitioners did not arise from the same transaction as the claim submitted in the bankruptcy proceeding. Petitioners' remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Yesawich Jr. and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.