Matter of O'Neill v New York State Tax Appeals Trib. (2025 NY Slip Op 03110)

Matter of O'Neill v New York State Tax Appeals Trib.

2025 NY Slip Op 03110

Decided on May 22, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 22, 2025

CV-23-1101
[*1]In the Matter of Dominica O'Neill, Petitioner,
v
New York State Tax Appeals Tribunal et al., Respondents.

Calendar Date:March 25, 2025

Before:Egan Jr., J.P., Pritzker, Lynch, Ceresia and Mackey, JJ.

Barton LLP, New York City (Alvan L. Bobrow of counsel), for petitioner.
Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for Commissioner of Taxation and Finance, respondent.

Mackey, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a sales tax assessment imposed under Tax Law article 28.
Petitioner is the owner of Pacific Club Holdings, Inc. (hereinafter Pacific), which is responsible for the issuance and redemption of scrip, i.e., the in-house currency, of an adult entertainment establishment, the VIP Club (hereinafter the club), in Manhattan. The club is jointly operated by Pacific as well as West 20th Enterprises Corp., which is reportedly responsible for admissions and coat check charges, and Sushi Fun and Dining & Catering Inc., which provides bar and restaurant services. Notably, prior to 2006, Pacific was owned by Selim Zherka and Maurice Kavanagh, the owners of West 20th and Sushi Fun; at some point thereafter, ownership of Pacific was transferred to petitioner. Despite being responsible for separate functions, the three corporate entities share one point-of-sale system at the club and there is nothing to indicate to patrons that the club's operations are divided among three separate entities.
Patrons entering the club pay an initial entry fee and are thereafter able to view live performances in the club's main area or utilize the club's restaurant or bar. They may also, for an additional fee, access private and semiprivate rooms for the purpose of purchasing private performances. The entertainers in the private performances are paid directly by the patrons, with either cash or scrip. Patrons may use a credit card to purchase scrip from Pacific, which levies a 20% surcharge on the transaction. Performers may later convert any scrip received into cash, after being charged a 10% redemption fee by Pacific.
In August 2013, the Department of Taxation and Finance commenced a tax audit of West 20th and, as a result, learned of Pacific's and Sushi Fun's involvement in the operations of the club. For the audit period of December 1, 2007 through November 30, 2013, it was discovered that none of the three entities filed sales tax returns related to sale of the club's in-house currency. Based upon information gathered during the audit, the Department determined that the scrip sold by Pacific was used to pay for private performances by entertainers and, thus, constituted admissions fees within the meaning of Tax Law § 1105. Upon this basis, the Department issued notices of determination asserting tax deficiencies against petitioner, Pacific, West 20th and Sushi Fun. Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the assessments, finding that the scrip sold by Pacific was used to purchase performances and, thus, was subject to Tax Law § 1105 (f) (1). Petitioner filed an exception and, after a hearing, respondent Tax Appeals Tribunal affirmed the ALJ's determination. Petitioner then commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
"Judicial review of a [*2]determination of the Tribunal is limited. If the determination is rationally based upon and supported by substantial evidence, it must be confirmed, even if a different conclusion is reasonable" (Matter of BTG Pactual NY Corp. v New York State Tax Appeals Trib., 203 AD3d 1347, 1348-1349 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; accord Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d 86, 88 [3d Dept 2022], affd 42 NY3d 538 [2024], cert denied ___ US ___, 145 S Ct 1125 [2025]). Tax Law § 1105 requires, in relevant part, the payment of sales tax on "[a]ny admission charge . . . for the use of any place of amusement" and the "amount paid as charges of a roof garden, cabaret or other similar place in the state" (Tax Law § 1105 [f] [1], [3]). In turn, the tax law defines an admission charge as "[t]he amount paid for admission, including any service charge and any charge for entertainment or amusement or for the use of facilities therefor"; a place of amusement as "[a]ny place where facilities for entertainment, amusement, or sports are provided"; and a roof garden, cabaret or other similar place as a "place which furnishes a public performance for profit" (Tax Law § 1101 [d] [2], [10], [12]). Pursuant to Tax Law § 1132, it is "presumed that all receipts for property or services of any type mentioned in [Tax Law § 1105 (d)] . . . and all amusement charges of any type mentioned in [Tax Law § 1105 (f)], are subject to tax until the contrary is established" by "the person required to collect tax or the customer" (Tax Law § 1132 [c] [1]). Persons required to collect tax include "every vendor of tangible personal property or services [and] every recipient of amusement charges" (Tax Law § 1131 [1]).
The record supports the Tribunal's determination that Pacific's receipts from the sale of scrip are taxable as admission charges to a place of amusement. As this Court has repeatedly held, adult entertainment clubs constitute "a cabaret or other similar place . . . [and], given that charges of a cabaret or other similar place include service and entertainment charges, the revenue generated from the sale of scrip — which could be used to . . . purchase . . . private dances — is properly taxable under Tax Law § 1105 (f) (3)" (Matter of HDV Manhattan, LLC v Tax Appeals Trib. of the State of N.Y., 156 AD3d 963, 969-970 [3d Dept 2017] [internal quotation marks, ellipsis and citations omitted]; accord Matter of Gans v New York State Tax Appeals Trib., 194 AD3d 1209, 1211 [3d Dept 2021]).
The record here reflects that private dances were available to patrons by renting a private or semiprivate room for an additional fee to the club, with a separate fee payable to the performer. Contrary to Pacific's claim that its operations in the club were limited and merely constituted the conversion of currency, the performers' written agreements included in the record expressly provide that Pacific [*3]was entitled to a "referral fee" for scrip used by patrons to pay performers for "rendering private dances." The Department's tax auditor's notes likewise indicate that scrip was used by patrons to pay for private performances. Moreover, petitioner's court filings in a separate action similarly asserted that the club was paid a portion of the proceeds from performers' fees that were paid by patrons in scrip. Further, the performers' written agreements also provide that Pacific is responsible for the booking of performances, and the written concession agreement between West 20th and Pacific similarly describes Pacific's role as not only encompassing the sale of scrip, but also acting as the "booking/talent agency to arrange the entertainers" for the club. It is undisputed that Pacific received a 20% fee from patrons when issuing scrip, and then 10% from performers who thereafter redeemed any scrip received. In view of the foregoing, substantial evidence supports the Tribunal's determination that the purchase of scrip to pay for private performances constituted an admission charge within the meaning of Tax Law § 1105 (f) (1) and that, as the recipient of the amusement charges, Pacific was required to collect sales tax thereon (see Tax Law §§ 1105 [f] [1], [3]; 1131 [1]; Matter of Gans v New York State Tax Appeals Trib., 194 AD3d at 1211-1213; Metro Enters. Corp. v New York State Dept. of Taxation & Fin., 171 AD3d 1377, 1380 [3d Dept 2019]; Matter of HDV Manhattan, LLC v Tax Appeals Trib. of the State of N.Y., 156 AD3d at 966, 969). Although petitioner presented evidence that scrip was also used to tip performers,[FN1] petitioner failed to demonstrate what amount of scrip sold was attributable to tips. Accordingly, petitioner failed to rebut the presumption that all scrip sales were taxable (see Tax Law § 1132 [c] [1]; Matter of Gans v New York State Tax Appeals Trib., 194 AD3d at 1212; Matter of HDV Manhattan, LLC v Tax Appeals Trib. of the State of N.Y., 156 AD3d at 966). Petitioner's assertion that the sale of scrip is akin to the sale of gift cards, and subject to sales tax only upon redemption, is unpreserved for our review. In any event, that argument has been previously rejected by this Court (see Matter of Gans v New York State Tax Appeals Trib., 194 AD3d at 1211; see also 15 USC § 1693l-1 [b] [1]; [c] [2] [A]).
Petitioner failed to preserve the constitutional claims now raised on appeal and, thus, her arguments in this regard are not properly before us (see Matter of SLIC Network Solutions, Inc. v New York State Dept. of Taxation & Fin., 223 AD3d 1126, 1127 n 2 [3d Dept 2024]; Matter of Goldstein v Tax Appeals Trib. of the State of N.Y., 111 AD3d 986, 987 [3d Dept 2013], lv denied 24 NY3d 904 [2014]). Petitioner's related argument that the Tribunal improperly "pierced the corporate veil" by allegedly combining the three corporate entities is misplaced, as that concept is inapplicable here (see generally Matter of Morris v New York State Dept. of [*4]Taxation & Fin., 82 NY2d 135, 140-141 [1993]; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d 122, 126 [2d Dept 2009], affd 16 NY3d 775 [2011]). In any event, the Tribunal's determination did not rest upon the treatment of Pacific, West 20th and Sushi Fun as one entity, based upon their coordinated operation of the club, but upon its finding that Pacific's sale of scrip was taxable as a charge for amusement (see Tax Law §§ 1105 [f] [1], [3]; 1131 [1]).
We are likewise unpersuaded by petitioner's claim that the Department should be estopped from enforcing its assessment based upon a December 2008 letter from the Department's director of sales tax audit bureau. It is well established that "the doctrine of estoppel does not apply in tax cases unless unusual circumstances support a finding of manifest injustice" (Matter of Ryan v Tax Appeals Trib. of the State of N.Y., 133 AD3d 929, 930 [3d Dept 2015] [internal quotation marks and citations omitted]). "[I]n order to impose an estoppel upon a party, three elements must be established: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts" (Matter of Winners Garage, Inc. v Tax Appeals Trib. of the State of N.Y., 89 AD3d 1166, 1169 [3d Dept 2011] [internal quotation marks and citations omitted], lv denied 18 NY3d 807 [2012]).
The December 2008 letter relied upon by petitioner indicated that, "if appropriate books and records were provided to corroborate the 'unique' business model of West 20th and the records reflect the business scenario as discussed in theory, then the refund . . . for the quarter ending August 31, 2002, would be approved." However, it was further noted that records necessary "to substantiate the business model" and support the position that "the dance revenue [was] not subject to sales tax" had not yet been provided. Petitioner submitted a subsequent letter from a sales auditor with the Department, stating that no additional sales tax was due from Pacific for the audit period from December 1, 1999 through November 30, 2004. Nevertheless, the director of tax audits for the Department testified that the December 2008 letter was limited to the quarter ending August 31, 2002, as specified therein. Despite the testimony of petitioner's attorney that Zherka — the owner of Pacific prior to 2006 — relied upon the December 2008 letter to his detriment, there is no evidence that the Department acted in a way supporting the application of estoppel (see id.). Notably, an earlier letter submitted by petitioner from the Department dated July 2004 informs that, "if a gentlemen's club charges admission to enter the premises, the charges are subject to tax. Private dances, in and of themselves, which are performed for individual patrons, are not subject to tax. However, if private dances are performed in a separate room, then the charges for [*5]the private dances are considered to be admission charges subject to tax" (emphasis added). Accordingly, as "the elements required for the imposition of an estoppel simply are not present" here, the Tribunal properly determined that the doctrine of estoppel did not apply (Matter of Rashbaum v Tax Appeals Trib. of State of N.Y., 229 AD2d 723, 725 [3d Dept 1996]; see Matter of Ryan v Tax Appeals Trib. of the State of N.Y., 133 AD3d at 930-931; Matter of Winners Garage, Inc. v Tax Appeals Trib. of the State of N.Y., 89 AD3d at 1169).
Petitioner's remaining contentions, to the extent properly before us, have been considered and found to be lacking in merit.
Egan Jr., J.P., Pritzker, Lynch and Ceresia, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The parties agree that tips are not subject to sales tax.